WETMORE v. STROMEYER et al.

(Supreme Court, Appellate Division, First Department. March 24, 1899.)

TRUSTS—ACTS OF TRUSTEE—VALIDITY OF RATIFICATION OF CESTUI QUE TRUST.
　　A ratification by the cestui que trust, with full knowledge, of an agree-
　　ment between the trustee and a third person in regard to the disposition
　　of the trust property, cannot be avoided on the ground that the ratifi-
　　cation was made under duress of poverty, where no unfair means were
　　used.

Appeal from judgment on report of referee.

Action by Catherine F. Wetmore, as executrix of R. Carman
Combes, deceased, against Indiana V. Stromeyer, impleaded with
others. From a judgment entered on the report of a referee, both
parties appeal. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY,
O'BRIEN, and INGRAHAM, JJ.

S. B. Livingston, for plaintiff.

Oswald N. Jacoby, for defendant.

VAN BRUNT, P. J. This action was brought by the plaintiff's
testator to have his accounts in respect to the enterprise hereinafter
mentioned passed, and for such other equitable relief as might be
proper. The case was tried before a referee, who rendered a judg-
ment from which both parties appealed; but the only question pre-
sented to this court upon the argument was on the appeal of the
defendant Indiana V. Stromeyer, she claiming that certain acts per-
formed by the plaintiff's testator, Combes, as trustee, were unau-
thorized, improper, and in violation of his duty as such trustee. It
appeared before the referee that the Stromeyer interest belonged
to the defendant Indiana V. Stromeyer, who was represented by her
husband, Frederick A. Stromeyer, in all these transactions, and
who had full authority to act for and on her behalf; it not being
developed, until near the close of these transactions, to the other
parties in interest, that Frederick A. Stromeyer was not the one
who really owned the interest which he represented.

The facts, as established before the referee, seem to be briefly
as follows:

A railroad corporation, known as the Pennsylvania & Western
Railroad Company, incorporated under the laws of the state of Penn-
sylvania, existed prior and up to March, 1877. In March, 1877, a
new corporation, bearing the same name, was organized and incor-
porated as a successor thereto. On and after September 1, 1879,
the plaintiff's testator, Combes, and three others, among whom was
this appellant, each owned a one-quarter interest in said Pennsyl-
vania & Western Railroad Company. This appellant is, in some
places in the case, confused with her husband, Frederick Stromeyer,
who, however, acted at all times as her agent, and had full power
and authority to bind her by any of his acts. On or about June
3, 1880, this appellant, as well as all the owners of the stock of said
railroad company, other than Combes, delivered her stock therein
to Combes, as trustee. Thereafter Combes uniformly acted as trus-

tee for all the other owners, with their consent. On May 2, 1882, this appellant and the other cestuis que trustent instructed Combes, in writing, to sell out their interest in the said railroad company, as well as in a concern called the Franklin Improvement Company,— a construction company identified with the railroad company. On or about May 8, 1882, said Combes, personally (as to his own interest), and as trustee for the said cestuis que trustent, by an agreement in writing sold the said railroad company to one S. R. Peale. This agreement was satisfactory to, and approved by, all the cestuis que trustent. In and by said agreement said Peale agreed to pay $8,500 to Combes as soon as Peale's counsel should have found that said Combes was in a position to perform his part of the agreement to pay within four years the further sum of $15,000, and, on the completion of the construction of ten miles of railroad, to deliver to said Combes $150,000 worth of first mortgage bonds of said railroad company, or, at the option of said Peale, in lieu of such bonds, 75 per cent. of $150,000 in cash. On or before June 11, 1882, said Peale paid to said Combes the said sum of $8,500. On August 7, 1882, an additional agreement (hereinafter called the "Supplemental Agreement") was made between said Combes and said Peale, varying and rendering virtually nugatory the aforementioned agreement of May 8, 1882. Said supplemental agreement recites that, whereas Peale's counsel "has doubts about the authority of the Pennsylvania and Western Railroad Company to locate and construct its railroad through Clinton, Center, and Clearfield counties, Pennsylvania, and it being desired to judicially determine that question," and then provides that Peale should be allowed to use another railroad company, established under another charter, referred to as belonging to Peale and those jointly interested with him, to contest the right of the Pennsylvania & Western Railroad Company to build over a certain portion of its claimed roadway, and that, if the question so raised should be determined against the said Pennsylvania & Western Railroad Company, then the $8,500 already paid was to constitute the whole compensation of Combes and his cestuis que trustent for the property conveyed by the agreement of May 8, 1882. The defendant appellant, or her agent, Frederick A. Stromeyer, had knowledge of the execution of this agreement the day following. After the execution of said supplemental agreement, said Peale and others organized the Beach Creek, Clearfield & Southwestern Railroad Company, which thereupon began to build a railroad upon part of the location of the Pennsylvania & Western Railroad Company. The Pennsylvania & Western Railroad Company began to build its road, but was enjoined therefrom in an action brought against it by the said Beach Creek, Clearfield & Southwestern Railroad Company, since which time no work whatever has been done on the construction of the Pennsylvania & Western Railroad Company. In 1883 an action of quo warranto was brought against the Pennsylvania & Western Railroad Company, at the instigation of Peale, which resulted in a judgment of ouster being given against said railroad company from a place called "Beach Creek Gap," a portion of its claimed roadway. An appeal was taken by the said Pennsylvania & Western Railroad Company from said judgment of

ouster, which continued pending until the claims of Combes and his cestuis que trustent against Peale were settled long afterwards.   On or about July 13, 1885, Combes and all the cestuis que trustent joined in an agreement with Simon Sterne, Esq., of the New York bar, whereby the latter undertook to prosecute their claims against Peale and others, by which agreement Combes and his associates agreed to pay out of the proceeds of whatever might be recovered, either at the end of the litigation, or as the result of a settlement, first the costs and expenses of any litigation which might be conducted, and out of the remainder to pay to Mr. Sterne 25 per cent. thereof for his services in the conduct of the litigation, and 75 per cent. to be the property of the associates; all charges for counsel fees for the conduct of proceedings in Pennsylvania to be at the expense of Mr. Sterne, who was to have the sole determination as to the proceedings there to be instituted, and whom to employ.   In pursuance of the authority conferred by this agreement, Mr. Sterne commenced two actions in the supreme court of the state of New York, neither of which was brought to trial.   The complaint in the last action was verified by Frederick Stromeyer on the 28th of May, 1886, as one of the plaintiffs and parties in interest.   No mention was made therein of the defendant Indiana V. Stromeyer, or of any interest claimed by her in the company or its property.   In the complaint thus sworn to by Frederick Stromeyer is the following allegation:

"That said Combes and Berthoud, being fully persuaded that the said action was for the advantage of the Pennsylvania & Western Railroad Company, and was honestly undertaken in its interest, sanctioned, aided, and seconded all the acts and proceedings of said Peale, and surrendered the surveys and rights of way of the Pennsylvania & Western Railroad Company to the said Peale; and under the advice of one William A. Wallace, the attorney of said Peale, and who was the confidential adviser of, and largely interested with, the said Peale, and who was believed by said Combes and Berthoud to be acting for the common benefit of the parties to the said contract of May 8, 1882, the said Combes and Berthoud, on their part, on or about August 7, 1882, signed a supplementary agreement."

Thereafter Mr. Sterne, with the approval of all concerned, realized certain sums in settlement of the claims placed in his hands, and, after deducting his fees, paid over to Mr. Combes the balance, which was the principal asset accounted for by Combes herein.   The Stromeyers having assigned a certain proportion of their claim in this action to one Richard Meyer, the referee found that the Stromeyer interest should be paid to Meyer, and that nothing remained due to either of the Stromeyers.

The appellant Stromeyer claims that the agreement of August 7, 1882, was executed without their knowledge, and that their subsequent ratification of the agreement is not binding upon them, because such ratification was made under duress of poverty.   We are unable to see upon what theory the appellant Stromeyer can avoid the effect of the subsequent ratification of the agreement of August 7, 1882.   There is no pretense but that such ratification was made with full knowledge of all the facts, and that they joined in all the attempts to secure as much as possible out of the enterprise in which they were interested.   They joined in the agreement with Sterne.

Frederick Stromeyer swore to a complaint in which he avers the honesty of Combes in entering into the supplemental agreement; and, when a compromise was made, they distinctly approved it, and they participated in the benefits arising therefrom. The fact that, in consequence of their pecuniary condition, the nimble sixpence was of much more importance to them than the slow shilling, in no way constituted duress; nor would it relieve them from their repeated ratifications of an act which was sworn by them to be honestly done, and in the interest of the cestuis que trustent. It would be introducing a new and dangerous element into the principles of equity, to hold that the pecuniary condition of parties to an agreement could avoid its binding effect. While there may possibly be cases where the fraudulent use of such condition by a party in order to secure an unconscionable advantage may be availed of to obtain relief from agreements so entered into, the case at bar is entirely barren of any proof that the plaintiff's testator used any unfair means in order to bring about the ratification which they freely made.

We are of opinion, therefore, that the referee was correct in the judgment rendered, so far as presented on this appeal; and it should be affirmed, with costs to the plaintiff. All concur.